Curia, per Johnston, Ch.
In announcing the judgment of the court in this case, I am embarrassed by those difficulties which a Judge must always experience to whom is assigned the duty of exhibiting the reasons of a decision resulting from a combination of the widely differing opinions of the several members of the tribunal, none of which exactly coincide with his own. It is hardly to be expected that I shall be able to put forth the reasons of my brethren, in which I do hot concur, in *438 the same clear light with which they presented themselves to their own minds ; for the plain reason, that their failure to convince me, is demonstrative proof that I do not so fully apprehend them. But I shall endeavor, as faithfully as I can, to disclose the opinions entertained by my brethren, as well as those entertained by myself, on the several questions discussed bycoun-•sel; taking care to distinguish between the questions^decided and those left undecided by us.
The first question is, whether the marriage settlement was sufficiently executed by Miss Wallace to vest the lands in the trustee; and this is not determined, a majority of the Judges not having been found on either side of the question.
The signature was by Miss Sanders, in the presence and by the direction of Miss Wallace.
The first section of the statute of frauds, (Rob. on Frauds, 240, book 1, chap. 4,) declares that “all leases, estates, interests of freehold, or terms of years, or any uncertain interest of, in, to or out of any messuages, manors, lands, tenaments or heredit-aments, made or created by livery and seisin only, or by parol— and not put in writing and signed by the parties so making or creating the same, or their agents thereunto lawfully authorized by writing, shall have the force and effect of leases or estates at loill only.”
A portion of the court is of opinion, that whatever would, at common law, have amounted to a signing by the party, is a good signing by the party under the statute ; that at common law, no doubt could have been entertained that a signature for the party, in his presence and by his direction, was attributable to him as his own signature ; and that the statute has, in no respect, altered this rule of law. That the statute has simply required the party to sign the conveyance, but has not defined what shall amount to a signature on his part — leaving that to be determined upon common law principles. That this construction of the statute is countenanced by the cases cited by the Chancellor in his decree, where the signing of one partner in the name of the co-partnership, in the presence and with the consent of his copart-ners, has been held a good execution by them — -and that the sanction of such a practice leads to no greater danger of the fraud and perjury intended to be avoided by the statute, than the cases which have been held to be in accordance with its provisions ; such as the party’s making his mark, or printing or stamping *439 his name, or subscribing by merely holding the pen while a third person writes his name.
On the other hand, an equal number of us hold, with the Chancellor, that under this section of the statute, no subscription can be attributed to the party as his own, unless he personally and physically engages in or contributes to the act. The statute requires him to sign himself, or if he signs by an agent, the agent must be authorized in writing. When another person subscribes for him, that person is his agent, whether the act be done in his presence or out of it. The only difference between an agency exercised in the presence and one executed in the absence of the principal, is in the evidence of the agent’s authority. The presence and superintendence of the principal, are proof of his assent; other proof may be necessary when he is absent.
But in either case it is not the principal who acts, but the agent. If the agency be made out by proof of authority, then the law comes in and declares that the act done by him shall be attributed to and shall bind the principal. The common law which admitted parol proof of authority, would, no doubt, have declared that an act done in the presence of the latter, by his procurement, was binding on him, and, in this sense, that it was his own act. But the statute, in this section, has emphatically declared that if an agent sign, his authority shall not be made out by parol, but must in all cases be proved by writing. The act, if otherwise evidenced, shall not be the act of the principal, nor bind him. This enactment, it is therefore contended, has materially altered the common law, in this — that a subscription by agency, wherever executed, if the authority to make it depend upon parol, is not the subscription of the party, nor conclusive on him.
It is further to be remarked, Rob. on Frauds, 287, book 1, chap. 5, that this construction of the first section of the statute is countenanced by the fifth section, which requires devises of lands and tenements to be signed by the testator, “ or by some other person, in his presence and by his express directions and by the sixth section, which declares that no will of lands shall be revolted but by will or codicil, or by burning, cancelling, &c. by the testator himself, “ or in his presence and by his directions and consent.” The contrast between these two sections and the first, is remarkable and very pregnant. The difference of the phraseology manifests a difference of legislative intention. *440 It shews that the legislature, in the fifth and sixth sections, carefully distinguished between a signing or cancellation by the testator personally, and by agency — although exercised in his presence and by his direction — and gave effect to them as two distinct things. The argument of counsel was, that by agent, in the first section, the legislature meant exclusively one acting apart from the principal and not in his presence ; and that acts done in his presence were intended to be regarded as his own personal acts. But no better refutation of this idea can be given, than is afforded by the fifth and sixth sections, where his own acts are contrasted with acts done under his supervision and superintendence.
Another remarkable circumstance is, that while the legislature has, in the first section of the statute, required proof, in writing, of the agent’s authority, in sweeping terms, applicable to all cases and circumstances; so that whenever the principal does not act in his own person, but by another, that other must hold his written .power ; it has, in the fifth and sixth sections, indulged the testator with an agent to act for him without written authority, provided the acts be done under his eye. Why is a written authority required under the one section and not under the others ? Evidently from a consideration of the different characters of the instruments contemplated by the different enacting clauses — the one a deed, to be executed without reference to the death or infirmity of the grantor, and while he is in health and vigor, and acting with deliberation ; the other a testament, executed or destroyed, most probably, in prospect of death, under physical disability, and under the pressure of circumstances admitting of no delay.
As to the cases where the signing of one partner for his co-partners in their presence, has been allowed to bind them, those of us whose opinions I am now representing, conceive that they have turned on the intimate relation and identity of interest existing among the partners, which have led the courts to allow a greater efficacy to vicarious acts in partnership cases, than would be admitted in other cases where there is no community between the principal and agent. If the court were bound by those cases to depart from the requirements of the statute, it would confine itself to like cases, and not extend what is conceived to be a misconstruction, to other and dissimilar circumstances.
And as to the observation, that the allowing the authority of the agent to be made out by parol proof that he acted in the *441 presence of the principal, is no more dangerous than to allow proof that he made his mark, or set his seal or stamp, or allowed another to guide the pen which he held ; we answer, that it is the function of the court to carry out the statute in its terms, and if perjury may be committed by allowing proof to be made that the party has done what the statute required him to do, for the purpose of binding him in obedience to the statute, that is a very insufficient reason for throwing ourselves open to more perjury in allowing proof of what he has not done as required by the statute, for the purpose of binding him in direct opposition to the statute. The legislature has required the party to sign the deed, and he does sign it. The statute does not require him to sign it in any particular way or unaided. He signs with a stamp, or a mark, or makes use of a help in writing, but he does sign. No other person signs for him. His signature, however performed, must be proved by parol, and perjury may be committed. No human law could guard against this — and certainly, though the party subscribed his name in autograph— although, according to any construction of the statute, this would be a -full compliance with its provisions, still, if his writing were little known, perjury might be committed. How can you certainly guard against such things ? But the statute requires that where an agent signs, his power must be evidenced in writing. Here an agent subscribes the deed,' and has no written authority. Who is to be responsible for the perjury that may be perpetrated in the effort to substitute parol for the written power 1 Not the legislature, which forbids' all parol, and, by consequence, all swearing in the case, but the court, which admits them.
A case has been mentioned of a person physically incapable of signing, and therefore incapable of giving a written authority to an agent to sign for him ; and it has been asked, shall not such a person be allowed to sign by an agent acting in his presence? The danger of fraud and perjury intended to be avoided by the statute, threaten the whole community, and the objects of the legislature are not to be sacrificed to an anomolous case. The statute has, for the general good, required contracts of conveyance to be executed in a particular manner, and if there be persons who cannot so execute them, why, then it amounts to only this, that such persons cannot so contract. The law has said that whole classes, such as idiots, infants, (fee. shall not contract; and it may, for wise purposes, say that others may be circumscribed in *442 their capacity to convey. There never was, and never can be, a law by which some persons may not be injured.
As I have stated, the Judges here who hold the two opinions X have endeavored to set forth, are equal in number. But there are other Judges who have not been able to come to a decision of the question, either one way or the other, although rather inclining to the latter opinion. The point is not decided, and I have thrown out these observations for the purpose of drawing the attention of the profession more closely to the subject in future cases, where a decision is necessary. But some members of the court who were not prepared to hold the deed well executed by Miss Wallace, are nevertheless satisfied that, since her marriage, and in consequence of what has taken place, she is entitled to its benefits, even in regard to the land ; and these, whose views I am now to express, in connexion with those who hold her signature good, form a majority of the court.
The first section of the statute was principally intended for the protection of the party conveying. If Mrs. McCollough was not bound by her conveyance, she may nevertheless assent to it. As observed by Mr. Roberts (a) in relation to another branch of the statute, “there may be cases, too, as it is conceived, in' which the signature of one of the parties may' be binding upon both; as when a bill is filed for a specific performance of an agreement, signed only by the defendant, the plaintiff acquiesces, by his application for relief, in all the terms of the instrument which are required to be performed by him.” Owens vs. Davies, 1 Ves. Sr. 82. Though this passage relates to contracts for the sale of lands, and not to deeds conveying them, that portion of the court to which X last referred, do not see, upon principle, why a party may not assent to be bound by a conveyance which he did not sign, as well as by an agreement to which he is not bound without his signature, and has not subscribed.
This brings us to the question, whether both tracts passed under the schedule; and the court is satisfied that a body of land consisting of subdivisions, but generally regarded as one tract, may pass as one tract. This appears to be the case here; and it seems to be no sufficient objection, that the aggregate of the two parcels exceeds the number of acres specified, as the land is conveyed “ more or less.”
*443 Then the question arises, whether the defendant is accountable for the amount received for both the parcels of land.
In the conveyance of one of them to John Parham, (erroneously stated in the decree to have been made to Clough Ming, which error must be corrected,) Mrs. McCollongh joined, and effectually relinquished her inheritance. The court is of opinion she is bound by her act, and cannot take advantage of a devastavit in which she joined. It is no answer, to say that she was a feme covert, and not bound by her act. Although generally, in this State, a feme coveft is not bound by her acts, this cannot apply to conveyances by her of her inheritance. As to these, the Act of Assembly makes her competent. Besides, if it be objected that the title was not in her, but in the trustee, it is a sufficient answer that the title is still in him, and ha has sustained no injury by the sale.
With respect to the other tract, we see no reason to differ from the conclusion of the Chancellor, except in this, that Mc-Collough being, by the terms of the settlement, entitled to the income and profits of the trust property, during the joint lives of himself and wife, is not chargeable with interest for that time on the sum received by him for that tract. But he must pay that sum to the executors of the trustee, to be by them held on the trusts of the settlement, or give them bond with sureties, to be approved by the commissioner, and by the court, upon his report of the fact, for its payment at the expiration of the joint lives of himself and wife — and this decree must form a lien on his property until one or the other of these alternatives be complied with.
This brings us to the questions in relation to the notes of hand. The deed does not convey, nor does it profess an intention to convey, all the property and choses of Miss Wallace. It expressly refers to the schedule for a description of the subjects of the conveyance; and the whole court is of opinion that the deed, independently of the schedule, conveys nothing. We must look to the schedule, then, as the test of what is conveyed and assigned ; and we find, among other things li also the following notes of hand, one given by John Barham to the said Elizabeth for one thousand six hundred and ninety-one dollars, with interest thereon — -one given by William Wallace for one thousand five hundred dollars, with interest thereon — one note of hand, given by Martha Sanders, for one hundred dollars, with interest thereon.
*444 A note on Martha Sanders, corresponding to the description, came to the hands of the defendant; and no doubt he is properly chargeable with $112 96, to which it amounted at the date of the settlement.
The difficulty is as to the notes of Parham and Wallace.
Three notes, instead of one, on Parham, were found, the principal sums of which, respectively, were $295, $195, and $300, making together $790. So that no one of them, nor the three together, correspond to the description of the schedule: and even with the addition of the interest due on them at the date of the settlement, they fell $22 30 short of the description.
Instead of one note-.on William Wallace for $1500, nine were produced, two of which were not on Wallace but on Mrs. Hunt. Of those on Wallace the largest was for $760, on which there was due at the date of the deed $673,30 for interest, making the whole amount of this note, at that time, $1433,30.
The principal of the whole of the notes on Wallace, at the time referred to, was $1430 84, and their interest $1382 59, making, of principal and interest, $2813 43. If we add the principal of Mrs. Hunt’s notes ($141 90,) and their interest, ($107 06,) the principal will be $1572 74, and the interest $1489 65, forming an aggregate, at the date of the deed, of $3062 39.
It will be seen by this statement that neither singly, nor by any combination, and whether interest be taken into the calculation or excluded, do these notes, any more than those of Par-ham, coincide with the description in the schedule.
In the application of the descriptions of the schedule to these notes, the court has experienced much difficulty. The point has been argued as if it. involved the question whether parol evidence was admissible to shew the intention of the instrument. But this is a misapprehension. If evidence of this sort had been presented and received, that the intention of the parties was to embrace this or that note, or all of the notes, as explanatory of the terms of the schedule, this would have raised that question, and the whole court is of opinion such evidence would have been inadmissible.
It is the familiar and necessary practice, where specific things are described in a will or deed, to ascertain by parol the existence and qualities of the things which it is insisted pass under the instrument; and if the things, as proved by the evidence to exist, correspond with the description, the instrument itself con *445 tains the evidencie that they are the things intended. It lays hold of them by its own terms, and conveys them to their intended destination. This process involves only the evidence of the character and existence of the subject of donation, and the construction of the instrument by which it is made.
When two things are proved to exist, each satisfying the description given in the paper, an ambiguity, previously latent, is created, which of them is intended. Here, alone, is parol evidence receivable to aid the court in making a selection between them. But even here, it will be obsered, though the evidence is received of necessity to give operation to the deed or will, it, is to give it an operation conformable to its terms. It is not to explain the construction, and of consequence, the meaning of the terms employed in it, much less to vary them; but simply to enable the court to apply them in exact conformity to the meaning and intent of the party, to be gathered from the paper by construction.
But when, of two things presented, neither tallies with the description given, it is against principle,- whatever anomolous cases may be found in the books, to receive evidence which of them was intended, or whether both were intended.
In this case no such evidence was offered or received, nor would it have been admitted. The only question is therefore one of construction of the deed.
Under the description of one note on John Parham for $1691, and one note on William Wallace for $1500, can the, deed refer to the three notes of Parham and the nine notes on Wallace, for different amounts?
A large majority of the court is of opinion that as the deed refers to, notes, as existing, it must to some extent operate upon the only notes found to have existed at the time.
As to the extent of its operation three opinions exist here.
1. One is, that only one note on Parham and Wallace, respectively, passed.
2. Another is, in conformity to the Chancellor’s view, that all the notes passed.
3. The third is, that the conveyance must be construed as an assignment of $1691, due by Parham, and $1500 due by Wallace, by note.
A majority of the court rejected the two first of these opinions, but adopted the last.
The first of the three is the one in which I personally concur. *446 and while I shall endeavour to do justice to the reasons of the majority. I think it due to such a question, doubtful and difficult as it is on all hands acknowledged to be, to state very briefly the grounds of my own opinion.
In the first place, it seems too plain to require reasoning or authority to shew, that the assignment was of a specific chose in action, and not of so much money. If these words had oc-cured in a will, I apprehend there could be no diversity of opinion that they would have constituted a specific and not a pecuniary legacy, so that if no note, had been found on the persons mentioned, the legacy would have failed, nor could the amount have been made up from any other source.
Then the very thing intended to be given, in the form and according to the description employed, is the only thing which can pass under the assignment; and whether the thing presented can pass, must depend upon the proper construction of the words of the assignment. .
It is admitted, that where, by part of the terms employed, the thing can be ascertained, a further false description will not vitiate nor prevent the thing, already ascertained by the true description, from passing. The things here described are, one note of John Parham to Elizabeth Wallace, and one note given by William Wallace. One note on each of these parties is produced. So far the description is true, and so far the assignment is satisfied. But neither of these notes is of the amount indicated in the schedule. Here is the false description, but if no other notes were produced, this would not vitiate or frustrate the assignment. It is only when the party claiming, instead of producing the note coming nearest the description, goes on to produce others, that any serious difficulty arises. But the additional notes are not produced to exhibit an amount corresponding to that indicated in the schedule. If they had exhibited such a coincidence, it might have been contended that the false description was in the enumeration, and not in the amount, of the notes. But the additional notes have the effect of falsifying one description already ascertained and satisfied, without conforming to another. The first note produced violated only one of the terms of the description; these now produced violate two. I shall not proceed to illustrate this point by numerous other observations which readily occur, but simply remark, that the additional choses cannot be let in under Mr. Wigram’s proposition, referred to in the decree, that when the subject of disposition *447 does not correspond to the description given in a primary sense, it may be let in, if it corresponds in a secondary sense. Although a body of land, divided by an ideal line, may be considered in one sense as one tract, and in another as two, there is no sense in which one note can be considered as nine, or two notes as twelve.
The second opinion was that adopted by the Chancellor, of which the reasons are strongly set forth in the decree.
But, as I have said, neither of these opinions is that of a majority of the court.
The construction adopted by the majority is, that the assignment was intended to convey debts due by Parham and Wallace on notes, to the extent of $1691 on the former, and $1500 on the latter. That an assignment of so much money was intended; and that the notes were referred to as the means by which it was secured and to be raised. They acknowledge the difficulties of this construction ; but they see enough, in the state of facts existing at the date of the deed, to satisfy them that no other construction will subserve the real intention of the parties. In support of their view they conceive that the case (a) was well cited in argument, where £1250 value of 4 per cent stocks, was satisfied out of 3 per cent, long annuities, upon proof that the testator had purchased the 3 per cents with the 4 per cents, and that the will was copied by the draftsman from a will drawn while he yet held the latter; not that the court would rely on the decision as authority that parol evidence was admissible that three per cents were meant, but for the purpose of shewing that the legacy was pecuniary, and that the reference to the stocks was merely demonstrative.
Of course the sum due by Parham at the date of the deed being only $1668 70 instead of $1691, the former sum only passed, which added to the $1500 given on Wallace, and the $112 96 on Martha Sanders, makes the assignment, on the score of the notes, amount to $3281 66.
It is the opinion of the court that the defendant is chargeable only with this amount, to be paid at the expiration of the joint lives of himself and wife.
The plain intent, according to the construction of the deed which has been adopted, was to place so much money in trust, *448 to the interest or profits of which the husband was entitled, until the expiration of the time above mentioned.
It is true, the defendant, under a different, and, as the court believes, a mistaken construction of the instrument, did execute receipts for the notes of Parham and Wallace, in the name of his wife. But such an act, under such a misconstruction, and without any consideration, should not have the effect of converting the mistake into a declaration of trust beyond the extent of the trusts of the deed.
Nor can the court attach a trust upon the negroes received in lieu of the money, to any greater extent than to declare a lien on them and the rest of his property, until the defendant shall repay the money to the executors of the trustee, or secure the payment of the same, by instruments to be approved by the commissioner, and by the court upon the same being reported.
The defendant, being entitled to the interest and profits of the fund, was entitled to borrow it from the trustee, upon proper security, and make the most profitable use of it within his power. .Resolved into its elements, the transaction which took place was substantially this, that the defendant borrowed the money from the trustee, and with it bought the negroes from Wallace and Parham, and is entitled to the benefit of his bargain. His only obligation is to replace the money; but until he does this, or secures its being done, the negroes purchased must represent the fund employed.
It is ordered that the foregoing opinion stand for the decree of this court, and that the dircuit decree be modified accordingly. In all other respects the circuit decree is affirmed.
Johnson and Dunkin, CC. and Richardson and Wardlaw, JJ. concurred.

 Rob. on Frauds, 124.

 Selwood vs. Mildmay, 3 Ves. Jun. 306.